RECEIVED
IN LAKE CHARLES, LA
FEB - 1 2011
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| CASSANDRA MONCEAUX | DOCKET NO. 2:10 CV147 |
|---|---|
| VS. | JUDGE MINALDI |
| MONUMENTAL LIFE INSURANCE COMPANY | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment, filed by the defendant, Monumental Life Insurance Co. ("Monumental") [Doc. 13]. The plaintiff, Cassandra Monceaux, filed an Opposition [Doc. 15]. Monumental filed a Reply [Doc. 17].

### BACKGROUND

This lawsuit involves a claim by the plaintiff over a policy of accidental death insurance issued by Monumental to her husband, Darryl Monceaux. In July 2009, Mr. Monceaux tragically died while operating his motorcycle. At the time of his death, Mr. Monceaux had two life insurance policies with Monumental. The first, a term life insurance policy, provided $7,500 of coverage to Mr. Monceaux. The second, a supplemental accidental death policy (the "Policy"), provided $150,000 in accidental death benefit coverage.[1]

The plaintiff first considered purchasing the Policy after receiving a Monumental brochure in the mail. The brochure explained that "[a]s motor vehicle deaths continue to rise, [the Policy] covers the very real risks [people] take every time [they] get into a car." It went on to explain that:

---

[1] See Def.'s Ex. A-1, Decl. of Reve Schnats ¶ 5 (Term Life Insurance Policy No. 00QE-ID2U); Id., Ex. A-2 at 1(Accidental Death Insurance Policy 008U-9HCQ); Compl. ¶ 3.

> This "Ride and Drive" accidental death coverage pays $150,000.00 benefits if you die from a covered injury as a result of: 1) driving a car – your own or anyone else's – or driving any land motor vehicle for hire; 2) riding in a car or as a fare-paying passenger in a common carrier – such as a bus, plane or train – or getting on or off one; 3) being struck by any motor vehicle as a pedestrian.[2]

The plaintiff completed the application attached to the brochure and mailed it to Monumental. Meanwhile, she called a Monumental representative to ask whether the Policy covers motorcycle accidents. Purportedly, without inquiring further, the representative assured her that it would. Receiving the assurance they needed, the plaintiff and her husband then purchased his motorcycle. Thereafter, Monumental mailed her a copy of the Policy, and the plaintiff consistently paid premiums on the Policy up until her husband's death.

After her husband's death, the plaintiff submitted claims for benefits under both policies. Monumental paid the full benefit under the term life insurance policy.[3] However, in a letter dated October 20, 2009, Monumental informed the plaintiff that because her husband's death resulted from injuries sustained in a motorcycle crash, benefits were not payable under the Policy. The letter directed the plaintiff to the Policy's terms to justify the denial.[4]

According to the terms of the Policy, Monumental will "pay a benefit if an insured dies as the result of an injury that occurs from one of the Accident Hazards described." The policy then lists two types of hazards: (1) a Motor Vehicle Hazard and (2) a Common Carrier Hazard, the latter being inapplicable in this case.[5] Next, the policy lists the three varieties of Motor

---

[2] Decl. of Donna Blain, Ex. B-1 [Doc. 13-3].

[3] *Id.*, Schnatz Decl, Ex. A-5, ¶ 10.

[4] *Id.*, Ex. A-7.

[5] *Id.*, Ex. A-2 at 3. The Common Carrier Hazard is inapplicable because it is limited to death as a result of being injured while riding or getting off or on a Common Carrier.

Vehicle Hazard; only the first is applicable here.[6] The first variety occurs when an "Insured dies as a result of being Injured . . . while riding in or driving a Private Passenger Automobile." To determine whether the death occurred while riding in or driving a "Private Passenger Automobile," the policy provides definitions. According to the policy definitions, "'Private Passenger Automobile' means a car, jeep, van, or truck that is not licensed to transport passengers for hire. A truck with a factory rating load capacity greater than 1,500 pounds is not a Private Passenger Automobile." According to Monumental, because Private Passenger Automobile does not include motorcycles, it denied the plaintiff's request for benefits under the Policy.[7]

On January 5, 2010, the plaintiff filed a lawsuit against Monumental. She alleges that she called a Monumental representative prior to purchasing the Policy "to determine whether the life and accidental death policies would cover [her husband] while riding his bike." According to the complaint, the representative assured her that Monumental would cover that contingency. As a result, the plaintiff purchased the Policy just days before her husband purchased his motorcycle. She further asserts that the Policy "covers insureds riding motorcycles."[8] Or, alternatively, the Policy language is ambiguous, leading an insured to conclude that the Policy includes motorcycles. Accordingly, the plaintiff alleges that Monumental failed to make payment as required under the Policy. Not only does she request the policy proceeds, she also requests

---

[6] *Id.* The other two varieties are inapplicable. One concerns being struck as a pedestrian. The other involves an injury while driving for hire.

[7] Def.'s Supplemental Ex. A-2, 2 [Doc. 23-2].

[8] Compl. ¶ 3.

penalties and attorney fees because of Monumental's alleged arbitrary and capricious denial of her claim.[9]

Monumental filed a Motion for Summary Judgment, arguing that the policy language unambiguously does not include motorcycles in its definition of Private Passenger Automobiles. Monumental, moreover, claims that the alleged communication between the plaintiff and its representative cannot serve to expand coverage outside of the Policy's written terms. Accordingly, any reliance by the plaintiff on those representations is unjustifiable as matter of law.[10]

The plaintiff responds by arguing that the policy is ambiguous and therefore must be construed to provide coverage. Next, the plaintiff claims that the oral communication between the plaintiff and the Monumental representative presents a material issue of fact for trial. Monumental's representation constitutes either a negligent misrepresentation or an extension of coverage to include motorcycle accidents. Accordingly, the plaintiff claims that summary judgment is inappropriate.[11]

This Court, thus, must determine whether the insurance policy at issue is ambiguous. If it is not ambiguous, the court must next determine whether the Monumental employee's representation, made prior to formation of the contract, is legally sufficient to extend coverage to include motorcycle accidents. Finally, this Court must consider whether Monumental's representation to the plaintiff is sufficient to raise a genuine issue of material fact as to the plaintiff's negligent misrepresentation claim.

---

[9] *Id.* ¶¶ 4-8.

[10] Def.'s Br. in Supp. of Mot. for Summ. J. 6-15.

[11] Pl.'s Opp'n 1-4.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). If the dispositive issue is one that the nonmoving party will bear the burden of proof at trial, the moving party may satisfy this burden by merely pointing out that the record contains insufficient evidence concerning an essential element of the nonmoving party's claim. *Celotex*, 477 U.S. at 325. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323).

If the movant satisfies this burden, however, then the nonmovant must "designate specific facts showing that there is a genuine issue for trial." *Tubacex*, 45 F.3d at 954. The nonmovant may not rest upon the pleadings. *See Celotex*, 477 U.S. at 325. In evaluating motions for summary judgment, the court must consider all of the evidence in the record and view all facts in the light most favorable to the nonmoving party. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party." *Delta & Pine*, 530 F.3d at 399.

## LAW & ANALYSIS

Louisiana courts interpret an insurance policy in accordance with the general rules of contract. *See Thermor Terratech v. GDC Enviro-Solutions Inc.*, 265 F.3d 329, 334 (5th Cir. 2001) (citing *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994)). The judicial responsibility is to determine the common intent of the parties, which "as reflected by the words of the policy[,] determine[s] the extent of coverage." *Id.* The words are to be given their general, ordinary, plain, and popular meanings, unless the words have acquired technical meaning. *Louisiana Ins. Guar. Ass'n*, 630 So. 2d at 763. In the absence of a conflict with statutes or public policy, insurers have the same rights as do individuals to limit their liability and to enforce whatever conditions they please upon their obligations. *Hearty v. Harris*, 574 So.2d 1234 (La. 1991).

Ambiguous provisions, however, are construed against the insurer and in favor of coverage. *Carrier v. Reliance Ins. Co.*, 99-2573, p. 12 (La. 4/11/00); 759 So. 2d 37, 43. If the ambiguous policy provision is susceptible to two or more reasonable interpretations, the interpretation that favors coverage must be applied. *Id.*; *Garcia v. St. Bernard Parish Sch. Bd.*, 576 So.2d 975 (La. 1991).

Here, the insurance contract unambiguously does not include coverage for Mr. Monceaux's motorcycle accident. The Policy covers the insured if he dies as a result of being injured in one of three delineated scenarios (collectively described as "Motor Vehicle Hazards). The first is applicable here. It provides for coverage for death caused by an injury "while riding in or driving a 'Private Passenger Automobile.'" The third scenario, though inapplicable, is

relevant to the analysis. It affords coverage for death resulting from injuries "while driving for hire a 'Land Motor Vehicle.'"[12]

Both "Private Passenger Automobile" and "Land Motor Vehicle" are further defined. "'Land Motor Vehicle' means any vehicle designed for use on a public street or highway. However, this does not include: (1) a farm type tractor or any equipment designed for use principally off public roads; or (2) any vehicle operated on rails (e.g., trolley) or crawler threads." "'Private Passenger Automobile' means a car, jeep, van, or truck that is not licensed to transport passengers for hire. A truck with a factory rating load capacity greater than 1,500 pounds is not a Private Passenger Automobile."

In the ordinary and common sense of the word, an automobile is a passenger vehicle with at least four wheels. *See* "Automobile" *Merriam-Webster Dictionary* (2011) ("a usually four-wheeled automotive vehicle designed for passenger transportation"). Indeed, when an insurance policy defines coverage to include "automobiles," even without specifically excluding or including two-wheeled motorcycles, Louisiana courts have consistently held that the term "automobile" does not include motorcycles. *See, e.g., Thomas v. Kilgore*, 537 So. 2d 828, 831 n. 2 (La. App. 5 Cir. 1989); *Flower's v. Lloyd's London Ins. Co.*, 364 So. 2d 650, 652 (La. App. 2 Cir. 1978); *Allstate Ins. Co. v Montalbano*, 335 So. 2d 793 (La. App. 1 Cir. 1976); *Chateau v. Smith*, 297 So. 2d 268 (La. App. 4 Cir. 1974); *Guillory v. Deshotel*, 251 So. 2d 91 (La. Ct. App. 3d Cir. 1971), *writ refused*, 253 So. 2d 67 (1971); *cf. Laporte v. North Am. Acc. Ins. Co.*, 109 So. 767 (La. 1926) (holding that motor-driven car does not include motorcycle). In contrast to an automobile, a vehicle describes some sort of means of carrying or transporting something. *See* "Vehicle" *Merriam-Webster Dictionary* (2011). As the insurance policy definition contemplates

---

[12] Def.'s Ex. A-2 at 3.

through its various exclusions, vehicle is a much broader term than automobile. It includes automobiles, motorcycles, tractors, and trolleys. Assuredly, one court has described the difference in the context of a motorcycle by explaining, "[a] motorcycle is a 'motor vehicle' but is not an 'automobile.'" *Flowers*, 364 So. 2d at 652. To include motorcycle within the term automobile would therefore be an unwarranted expansion of the term.

Even if this Court were to ignore the distinction between automobile and motor vehicle, the Policy further limits the term automobile to "Private Passenger Automobile." "Private Passenger Automobile" is again modified to include only four varieties of four-wheeled automobiles: cars, jeeps, vans, or trucks. It does not include vehicles principally designed to carry a single rider and no passengers, such as a motorcycle. Moreover, the added language within the definition is intended to further minimize coverage, not expand it. For example, the definition also restricts coverage based on whether the automobile is intended to transport passengers for hire. Thus, the insurance contract unambiguously extends coverage to only cars, jeeps, vans, and trucks (i.e., four-wheeled, passenger automobiles) that do not transport passengers for hire. Consequently, the Policy does not cover Mr. Monceaux's motorcycle accident.

Having determined that the insurance policy unambiguously excludes coverage for the motorcycle accident in this case, this Court must next determine whether the oral representations made by Monumental regarding coverage may expand the policy outside of its written terms. *But see Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 663 (5th Cir. 2000) ("When the language [of an insurance policy] is clear, the agreement must be enforced as written"). Ignoring the obvious defect to this argument (i.e., that Monumental made its representations

before the parties entered into an unambiguous insurance contract), the alleged statements made by Monumental may not extend or modify the coverage under the policy.

In Louisiana, any agreement modifying or extending coverage must be in writing and incorporated in the policy. Louisiana Revised Statute 22:867 explicitly provides:

> No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance.

Accordingly, "the representations of an agent cannot enlarge or extend coverage beyond what is provided for in the policy." *See, e.g., Sharff v. Ohio Cas. Ins. Co.*, 605 So. 2d 657, 661 (La. App. 2d Cir. 1992), *writ denied*, 608 So. 2d 196 (La. 1992).

Although the plaintiff correctly contends that Monumental's reliance on this statute is misplaced, she is nevertheless incorrect when she argues that its application is limited to protect the policyholder, not the insurer. To the contrary, the Louisiana Supreme Court has held that "the 'Entire Contract Policy Statute" is meant to protect the parties to the insurance contract by assuring that both have in their possession the entire contract." *Lindsey v. Colonial Lloyd's Ins. Co.*, 595 So. 2d 606, 611 (La. 1992) (holding, however, that as between the insured and third parties, the statute protects the insured, and not third parties). Consequently, the oral representations of Monumental cannot extend or modify the insurance contract as a matter of law.

Finally, the plaintiff contends that the Monumental is liable for its agent's oral representations that the Policy included coverage for motorcycle accidents. She specifically contends that Monumental is liable for its representative's negligent misrepresentation. To recover damages for negligent misrepresentation, the plaintiff must prove: "(1) a legal duty on

behalf of the defendant to supply correct information; (2) breach; and (3) damages resulting from justifiable reliance on the misrepresentation." *Abbot v. Equity Group Inc.*, 2 F.3d 613 (5th Cir. 1993). To support her argument, the plaintiff cites *Hilliard v. Louisiana Health Service and Indemnity Co.*, 411 So. 2d 1116 (La. App. 4 Cir. 1982).

In that case, the plaintiff filed a lawsuit alleging negligent misrepresentation against the defendant, her medical insurer, after the defendant denied her medical reimbursement claim on account of a pre-existing medical condition. *Id.* at 1118-19. One of the defendant's employees informed the plaintiff that her insurance covered a tonsillectomy, without asking any questions concerning her medical history or the plaintiff's policy. *Id.* at 1118. At the time of the phone call, the plaintiff had never seen a copy of her policy. *Id.* at 1119-20. Nor had the plaintiff been apprised of the policy exclusion for pre-existing medical conditions. *Id.* Thus, she had no means of discovering that the procedure was explicitly excluded under her policy. *Id.* The court held that the defendant's actions constituted negligent misrepresentation because the defendant was bound to supply accurate information. *Id.* at 1120. Having no information of her own, the court reasoned that the plaintiff would rely on the defendant's representations in making her medical decision. *Id.* Accordingly, the court found the defendant liable for negligent misrepresentation.

Monumental responds by arguing that the plaintiff may not recover, as a matter of law, since she is charged with knowledge of the terms of the insurance policy. According to a recent Louisiana Supreme Court opinion, "[i]t is well settled that it is the insured's obligation to read the policy when received, since the insured is deemed to know the policy contents." *Seruntine v. State Farm Fire & Cas. Co.*, 10-1108, p. 1 (La. 9/3/10); 42 So. 3d 968, 968 (citing *Isidore Newman Sch. v. J. Everett Eaves, Inc.*, 09-2161, p. 12 (La. 7/6/10); 42 So. 3d 352, 359). Thus,

according to Monumental, any reliance on the statement of its employee was unreasonable as a matter of law. *See Carr v. City of New Orleans*, 622 So. 2d 819 (La. App. 4 Cir. 1993).

To bolster its argument, Monumental relies on *City Blueprint & Supply Co. v. Boggio*, a case from Louisiana's Fourth Circuit. 08-1093 (La. App. 4 Cir. 12/17/08) 3 So. 3d 62. In that case, flooding from Hurricane Katrina damaged the insured's building. *Id.* at 65. The insured filed a lawsuit against his insurance company and his agent, asserting both negligent misrepresentation and breach of duty. *Id.* He alleged that his agent assured him that he was "fully covered" and that the hazard/fire policy in force covered flood damages. The court granted summary judgment for the defendants, reasoning that absent a specific question from the insured, an agent has no duty to advise the client that he is underinsured. *Id.* at 66-67 ("The [insured] testified that although the agent never told them that flood insurance was included in the commercial insurance package, they assumed that flood insurance was included. This blind assumption is not justifiable."). The court also explained, "[a]n insured is responsible for reading his policy and is presumed to know its terms." Thus, according to Monumental, an insured is presumed to have actual knowledge of the insurance policy's terms.

Because the holding in *Hilliard* rests upon the insured's inability to read her policy and know its terms, Monumental asserts that *Hilliard* is legally distinguishable and thus inapplicable. For example, in contrast to the insured in *Hilliard*, who could not discover the applicable exclusion before incurring reliance damages, 411 So. 2d at 1119, here Monumental's misstatement would have been cured once the plaintiff received a copy of the Policy, and well before she incurred any reliance damages. Indeed, because the plaintiff had a copy of the Policy well before the time of the accident, "[she] is deemed to know the policy contents." *Id.* In addition, upon receiving a copy of the Policy, the plaintiff could have read it and cancelled it

without incurring any additional cost.[13] According to Monumental's well-reasoned analysis, the plaintiff's reliance on *Hilliard* is misplaced. To a certain extent, Monumental is correct. *Hilliard* is at least factually, and thus legally, distinguishable

Still, the plaintiff ultimately complains of negligence.[14] Whether it is in the form of a breach of a legal duty or a misrepresentation, the plaintiff asserts that after she asked an explicit question concerning the extent of insurance coverage under the Policy, the Monumental agent assured her that Mr. Monceaux would be properly insured. As a result, she implicitly asserts that Monumental's representative failed to both place the appropriate insurance coverage and warn the plaintiff of the defective coverage. *See Offshore Prod. Contrs., Inc. v. Repub. Underwriters, Ins. Co.*, 910 F.2d 224, 229-30 (5th Cir. 1990) ("To recover for losses resulting from [a failure to procure the desired insurance], the plaintiff must prove (1) an undertaking or an agreement by

---

[13] Def.'s Ex. A-2 at 1("You may return this Policy for any reason within 30 days of: 1. the date you receive the Policy; or if later, 2. the date of your first premium payment"). In addition, this Court rejects, out-of-hand, Monumental's assertion that the plaintiff should have understood the Policy's terms based on the insurance brochure. The brochure is not the insurance contract. Further, when the insured needs to ask a specific question concerning policy coverage, the brochure directs her to a Monumental representative via an "800" number. Thus, a material issue of fact exists.

[14] Although a cause of action for failure to procure is premised on the insurance agent's mandatory duty to the insured, *see Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So. 2d 728 (La. 1973), this Court finds no reason to limit the applicability of failure to procure cases to these facts. Just as a cause of action for negligence is based on a legal duty between the agent and the insured, so too is an agent's failure to procure premised on the agent's duty to the insured. *Id.* Even ignoring the legal duties between parties to a contract, when Monumental's brochure provided a telephone number and implicitly offered to answer any questions, its actions, at least, created a material issue of fact as to whether it undertook a legal duty to the plaintiff – a duty analogous to that between mandatary and principal. *See id.*; *see also Boggio*, 3 So. 3d at 66-67 (analyzing negligent misrepresentation and failure to procure under an analogous test and applying reasoning from failure to procure cases to negligent misrepresentation cases). In addition, this Court finds that any difference between the insurance agent and the insurance company in terms of imposing liability is of no consequence. *Cf. Crayton v. Sentry Ins. Co.*, 612 So. 2d 767, 771 (La. App. 1 Cir. 1993) (finding the duties applicable to brokers and agents is the same where there is an agreement to procure insurance).

the insurance agent to procure insurance, (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance, and (3) action by the agent warranting the client's assumption that the client was properly insured"). Through this allegedly negligent misrepresentation, she seeks damages from Monumental through a theory of vicarious liability.[15]

Louisiana courts have imposed liability in similar cases, cases where an agent failed to obtain the insured's requested coverage, or at least advise the insured that the policy does not include the requested coverage. *Id.*; *Graves v. State Farm Auto Ins. Co.*, 01-1243 (La. App. 3 Cir. 6/26/02), 821 So. 2d 769; *see Isidore Newman School*, 09-2161, p. 12 (La. 7/6/10); 42 So. 3d at 359 (analyzing various cases). The Fifth Circuit, in fact, has imposed liability where the agent misrepresented to the insured the scope of coverage being purchased. *See Offshore Prod. Contrs. Inc.*, 910 F.2d 224. The agent was found liable even though the insured was presumptively aware of the policy's terms. *Id.* at 227 (although the insured did not have a copy of the contract, the insurance agent went over the language of the policy with the insured, specifically discussing the scope of the disputed stand-by clause). Likewise, in the seminal case of *Karam v. St. Paul Fire & Marine Ins. Co.*, an insurance agent inadvertently procured a policy with $10,000 of maximum coverage instead of the $100,000 of coverage the insured requested. 281 So. 2d 728, 730-31 (La. 1973). The Louisiana Supreme Court held the insurance agent liable for this error, even though the error would have been readily apparent to either the insured or the agent by inspecting the policy and reading its terms. *See id.*; *Karam v. St. Paul Fire & Marine Ins. Co.* 265 So. 2d 821, 823 (La. App. ) ("The policy was issued by Maryland Casualty

---

[15] In Louisiana, "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in their exercise of the functions in which they are employed." La. Civ. Code art. 2320.

with the lower limit of liability, as requested, and neither the [insured] nor [the insurance agent] realized that the smaller limits of coverage had inadvertently been issued until the . . . loss occurred."). In addition, some "courts have noted that it is *the agents specific knowledge of the insured's individual situation [that] trigger[s the] duty to disclose.*" *See Isidore Newman Sch.*, 42 So. 3d at 358 (quoting *Parker v. Lexington*, 06-4156, 2006 WL 3328041 (E.D.La. 11/15/06) (emphasis added).

In Louisiana, an insured is only presumed to know the policy's terms as to a specific coverage issue when the insured neither needs nor requests advice on that topic. *See Isidore Newman Sch.*, 42 So. 3d at 358; *see also Offshore Prod Contrs.* 910 F.2d at 231 ("Under Louisiana law, an insurance agent who is unable to procure coverage against a particular risk has a duty to inform the client about the difference between the requested coverage and the coverage provided by the policy actually obtained"). To illustrate, two common "threads" have emerged in cases asserting a cause of action for an agent's failure to procure coverage or give accurate advice as to the extent of coverage. *Parker v. Lexington*, No. 06-4156, 2006 WL 3328041, at * 3 (E.D.La. 11/15/06). "The first common thread is demonstrated . . . where the agent has negligently failed to procure the coverage requested by the insured." *Id.* This occurs, for example, where the agent misrepresents the scope of coverage being purchased. *See Offshore Prod. Contrs.*, 910 F.2d at 227. In these cases, liability only attaches when there is some specific question from the insured. *See, e.g., Isidore Newman Sch.*, 42 So. 3d at 357; *see id* at 231 ("the law does require [the agent] to inform [the insured] when the policy which he procured does not cover a specific risk about which the client expressed concern."). The question signals that the insured does not understand or has not read the policy's terms. *See Offshore Prods. Contrs.*, 910

F.2d at 230.[16] The insured is thus relying on the agent's superior knowledge and skill to diligently provide accurate answers regarding coverage. *See Karam*, 281 So. 2d at 730-31. "[A]bsent a specific question from the insured, an agent has no duty to advise a client that it is underinsured." *Isidore Newman Sch.*, 42 So. 3d at 357. The agent may presume that the insured understands the unambiguous policy terms. *Id.*

This holding is consistent with the second thread of case. In those cases, an agent has an affirmative duty to advise the insured of "aspects of the policies or aspects of insurance law that were not within the knowledge generally held by a lay person." *Parker*, 2006 WL 3328041 at * 3. "In other words, the information that the agent [has] a duty to provide [is] something about which the agent [has] superior knowledge given his insurance expertise, and the agent's specific knowledge of the insureds' individual situation triggers that duty to disclose." *Id.* Thus, in both threads of cases, it is the insured's needs and the agent's superior knowledge that triggers the duty.

Applying that rule to this case, there is a genuine issue of material fact as to the plaintiff's negligent misrepresentation claim that precludes summary judgment. First, there is an issue as to the misrepresentation and breach (i.e., whether the plaintiff requested specific coverage information regard motorcycle coverage and whether the Monumental agent responded with accurate information). The plaintiff says that she received inaccurate information from a Monumental representative; Monumental claims that conversation never happened.[17] If the plaintiff did request advice concerning coverage, she may rely on the agent's superior

---

[16] This may occur, as the court reasoned in *Hilliard*, where the insured does not have a copy of the insurance contract and thus relies on an insurance company representative to provide accurate information regarding the policy's exclusions. 411 So. 2d at 1119. Thus, while the facts of *Hilliard* are distinguishable, the reasoning is applicable.

[17] *See* Def.'s Mem. in Supp. of Mot. for Summ. J. [Doc. 13]; Pl's Opp'n [Doc. 15].

knowledge. Monumental, moreover, may not rest on the assumption that the insured read the policy and understood its terms.

Next, if such a breach occurred, there is a genuine issue of material fact over damages. Issues include whether the plaintiff is entitled to damages and the extent of those damages. Specifically, the trier of fact must determine whether the plaintiff justifiably relied on the misrepresentation. Accordingly, it is

ORDERED that Monumental's Motion for Summary Judgment is GRANTED in part and DENIED in part. The plaintiff's claims and damages arising out of Monumental's alleged breach of the plaintiff's insurance contract are hereby DISMISSED with prejudice. Monumental's Motion for Summary Judgment as to the plaintiff's claim for negligent misrepresentation is DENIED.

Lake Charles, Louisiana, this _1_ day of _Feb_ 2011.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE